Gardner agt. Barney.

## SUPREME COURT.

DANIEL GARDNER agt. HIRAM BARNEY and CHARLES BUTLER.

Where an appeal is taken from the judgment of the special term to the general term, and the proper *undertaking* executed by the appellant and his sureties, under and in pursuance of § 335 of the Code, the *obligation of the sureties* is not fulfilled, and the undertaking satisfied by a reversal of the judgment at the general term, *where the judgment of the general term has also been reversed in the court of appeals.*

That is, the *sureties* are not limited in their liability to the judgment of the *general term.* The *affirmance* mentioned in their undertaking, is an affirmance by the legally constituted tribunal having cognizance *finally* of the subject of the litigation. The *reversal* by the court of appeals, when effect is given to it in the court below, is in fact an *affirmance by the general term* of the judgment at the *special term.*

Nor are the liabilities of the sureties at all affected or changed by the fact that when they executed the undertaking there was no law in existence that authorized an appeal to the court of appeals from an order of the general term *granting a new trial;* but before the decision of the general term a law was passed which authorized such an appeal, and under which the appeal in this case was taken.

When an appeal is from a judgment against two defendants, the sureties upon a joint undertaking are liable if the judgment is *affirmed against one.* (*To the same effect is Seacord* agt. *Morgan,* 17 *How. Pr. R.,* 394.)

teste; the CHANCELLOR says: "I am satisfied that a neglect to make an execution returnable at the end of sixty days, from the receipt thereof by the sheriff, renders it irregular merely; and that the execution is not void, so as to make the attorney issuing it, and the party in whose favor it is issued, trespassers, without the necessity of an application to the court to set aside the execution for the irregularity."

In *Cassidy* agt. *Meacham, supra,* the CHANCELLOR said: "Perhaps a return made by the sheriff on an execution before the return day, may be valid by relation, after the expiration of the time the execution has to run. *Until the return day, however,* it would be the duty of the sheriff to seize and sell any property of the defendants which could be found within his bailiwick. *The execution cannot, therefore, be considered as legally returned unsatisfied until after the return day.* The creditor must, in his bill, set out the issuing of the execution, the time at which it was returnable, and the actual return of the sheriff thereon, in such a manner that the court can see that the remedy at law has been *legally exhausted.* The intention of the legislature was to adopt the principle settled by the court for the correction of errors in *Hadden* agt. *Spader,* (20 *John. R.,* 554,) and not to establish an arbitrary rule, by which the defendant might be harassed by a suit in chancery when he had sufficient property which could be reached at law *during the life of the execution.* In the case under consideration the court cannot legally know, or presume, *previous to the return day of the execution,* that the judgment will not be satisfied. Although the sheriff cannot now find property, the defendants may, before that time, satisfy the execution out of the equitable funds in their hands, which cannot be levied on by him."—REP.

*Brooklyn General Term, February,* 1863.
BROWN, LOTT and SCRUGHAM, *Justices.*

APPEAL by defendants from a judgment at special term. The facts will appear in the opinion of the court.

WM. CURTIS NOYES, *for the plaintiff.*
SAMUEL J. TILDEN, *for defendants.*

By the court, BROWN, Justice. In April, 1856, Daniel Gardner recovered a judgment at the special term of this court, held at Troy, in the county of Rensselaer, against Henry Smith and William B. Ogden, for the sum of $15,000 and interest thereon with the costs of the action, with a provision that the reconveyance of certain lands mentioned in the judgment, and within the time therein prescribed, should be deemed a satisfaction of the judgment or decree, so far as damages and interest were concerned. From this judgment an appeal was taken to the general term, and thereupon the defendants in this action entered into and executed the undertaking upon which this action is brought, which was duly acknowledged and filed in the proper office. The judgment was afterwards reversed at the general term and a new trial ordered. This was in December, 1857. In January, 1858, Gardner appealed to the court of appeals from the order granting a new trial, and in December, 1860, the court of appeals gave judgment in favor of the defendant Ogden, and against the defendant Smith—that is, the court of appeals reversed the judgment of the general term, and affirmed that of the special term against the defendant Smith. The judgment of the court of appeals was perfected in this court upon the remittitur against Smith; an execution against him was duly issued thereon, which was returned *nulla bona,* of which the defendants in this action had notice, but they omitted to pay the judgment. Thereupon Gardner brought this action against them upon the undertaking. The action was put at issue and tried before Mr. Justice LOTT, without a jury,

at the Kings circuit, in 1862, where the foregoing facts were found by him, and he rendered judgment against the defendants in this action for $23,104.41, besides costs. The defendants excepted and then appealed.

The undertaking is given in conformity with § 335 of the Code. It recites the recovery of the judgment at the special term, giving the amount thereof, and states that the defendants have appealed therefrom to the general term of the supreme court. It then asserts that the defendants " undertake that the appellants will pay all costs and damages which may be awarded against them on appeal, not exceeding $250 ; " and also, " that if the said judgment so appealed from, or any part thereof, be affirmed, the appellants will pay the amount directed to be paid by said judgment, or the part of such amount as to which the said judgment shall be affirmed, if it be affirmed only in part, and all damages which shall be awarded against said appellants on the said appeal." The defendants claim that the meaning and effect of their agreement is not to be enlarged by construction, so as to charge them as sureties for the defendants in the judgment appealed from; and that the recital in the words, " have appealed to the general term," is to be regarded as a limitation, restraining and limiting their liability to the appeal to the judgment of the general term. The judgment appealed from was entered upon the order of a single judge, and the only appeal that could be taken was that to the general term. In no other way could the defendants review what had been done. The undertaking would, therefore, have been quite as effective for all the purposes of perfecting the appeal and staying the collection of the money, mentioned in the judgment or decree, had the words " general term" been omitted. They are to be regarded as merely descriptive of what had been done to give point and effect to the words that follow, and not to limit the liability of the sureties to such order or judgment as might be rendered by the general term. Besides, the

subsequent words are explicit, that if the judgment was affirmed without limitation as to time or form, the appellants would pay it. The affirmance spoken of is an affirmance by the legally constituted tribunal having cognizance finally of the subject of the litigation. Any other construction would be at variance with the decisions of the courts in analogous cases. In *Gelston* agt. *Codwise*, (1 *John. Ch. Rep.*, 194,) the CHANCELLOR says : " It is the acknowledged doctrine of a court of review to give such decree as the court below ought to have given ; and when the plaintiff below brings the appeal, the court above not only reverses what is wrong but decrees what is right, and models the relief according to its own view of the ends of justice and the exigencies of the case. The court above, therefore, acts on appeals in a given case with all the plentitude of a court of equity of original jurisdiction, and the special terms of the decree, whatever they may be, become to this court the law of that case, and no other or further relief can be administered to the party." The general term committed an error in reversing the judgment or decree against Smith, and when this error was corrected in the court of appeals, the judgment of the latter court then became the law and the judgment of the supreme court. In *Traver* agt. *Nichols*, (7 *Wend.*, 434,) the question was, whether the security required to be given by a non-resident plaintiff, upon applying for a warrant, is confined to such sum as may be adjudged against him by the justice, or whether it also extended to the final determination of the cause when it was carried to the court of common pleas by appeal. The court, after citing the statute, said : " There is nothing in this act which restricts the security to the costs before the justice. It extends in terms to any sum which may be adjudged against the non-resident plaintiff in the cause. It is the same cause, although carried by appeal to the court of common pleas. No new pleadings are put in, and it is considered but a counter-action of the original suit." Vari-

ous cases are referred to in support of the opinion. In *Ball* agt. *Gardner*, (21 *Wend.*, 270,) the question was, whether the condition of a bond taken on suing out an attachment, before a justice of the peace, extended to, and is controlled by, the final result in the common pleas—in other words, whether a condition was kept by a recovery of judgment before the justice. The court adjudged not, and say: " The reasons given for the judgment of the court in *Traver* agt. *Nichols, supra,* apply with the greater force to the case before us. The plaintiff in the attachment binds himself to pay all damages and costs that the defendant may sustain by reason of the issuing of it, if he fail to recover judgment thereon. Now, it is clear that he has failed. The reversal in the common pleas, on the certiorari, has at least vacated the judgment before the justice, and if it proceeded upon the merits, has finally disposed of the subject matter of the litigation. (*Vide also Smith* agt. *Crouse,* 24 *Barb. S. C. R.,* 433; *Bennett* agt. *Brown,* 20 *N. Y. R.,* 99.) There is nothing in the section of the Code, under which the undertaking was given, nor in the language of the undertaking itself, which restricts the liability of the sureties to the action of the general term; and I therefore conclude that their duty and obligation is not fulfilled and the undertaking satisfied by showing a reversal of the judgment at the general term, where it also appears that its judgment has also been reversed in the court of appeals. This reversal by the court of appeals, where effect is given to it in the court below, is in fact an affirmance by the general term of the judgment rendered at the special term.

The judgment of the general term reversed that rendered at the special term and ordered a new trial. It is to be observed that the undertaking bears date on the 26th of July, 1856. At this time there was no right of appeal to the court of appeals from an order of the general term of this court granting a new trial. In 1857 the practice was

modified and the following provision inserted in the Code of Procedure : " But no appeal to the court of appeals from an order granting a new trial shall be effectual for any purpose, unless the notice of appeal contain an assent on the part of the appellant that if the order be affirmed, judgment absolute shall be rendered against the appellant. If the court of appeals shall determine that no error was committed in granting the new trial, they shall render judgment absolute upon the rights of the appellant." (2 *Laws of* 1857, *pp.* 551, 552.) It is quite apparent that but for this action by the legislature there would have been no substantial ground upon which this action could have been maintained; because, without the amendment to the law which I have quoted, the error made by the court at general term could not have been corrected by a direct appeal to the court of appeals. The cause must have been remitted upon the order granting a new trial to the circuit or the special term, there to be retried upon the law as announced by the general term, and subject to a new appeal by the party thinking himself aggrieved by the judgment upon the new trial. Thus the undertaking and the obligation of the defendants in this action would have been satisfied and extinguished. They now claim and insist that this change in the practice of the courts upon appeal has enlarged their liability and changed the nature of their contract as sureties, and that consequently, upon well known principles, they are discharged; or, to state the proposition in another form, that their contract does not extend to an affirmance of the judgment rendered under the new provisions of the Code. The defendants undertook that if the judgment was affirmed the appellants would pay. There is nothing in the undertaking which qualifies the word " affirmed." It was not to be affirmed in any prescribed manner nor in any given tribunal. It was not to be affirmed according to the practice of the courts existing at the time the undertaking was executed. The obligation was, that

the appellants should pay if the judgment was affirmed generally. The defendants' argument is in effect a claim that the mode of procedure existing at the time is to be regarded as incorporated into and made a material stipulation of the undertaking; that the contract is made with express reference to such modes of proceeding, and any change effected therein by the legislature or the rules of the court relieves the parties to the undertaking from their obligation. Such a rule would render all amendment and improvement in the practice of the courts attainable only at the hazard of impairing the obligation of undertakings previously given as security for the payment of moneys and the restoration of property in the numerous instances in which such instruments are required by the practice. A more sensible rule would be to hold that such undertakings are given with reference and subject to the power of the legislature to change the practice, provided such legislation does not impair absolute rights or stipulations material and essential to the security and protection of the parties who execute them. Thus a provision that a party recovering a judgment upon appeal, shall exhaust his remedy against the judgment debtor before he resorts to the sureties upon the bond or undertaking upon appeal, as in the statutory provision referred to' in the case of *Hamilton* agt. *Averill*, (11 *Wend.*, 625,) is made for their benefit and protection, and of which they cannot be deprived by legislation or otherwise, without at the same time impairing the obligation of their contract. Such a change in the law acts directly upon the contract as well as upon the proceedings in the action, because the issuing of an execution against the judgment debtor is the most efficient means of collecting the debt without resort to the sureties upon the bond or undertaking; but a change in the mode of hearing the appeal and of affirming or reversing the judgment appealed from stands upon very different grounds. The sureties upon the undertaking can have no interest what-

ever in having the proceedings conducted or heard in any particular mode.   If the appeal is heard and determined by the constitutional tribunals of the state, created for that purpose, the process by which that end is attained is not material to the contract of the sureties upon the undertaking, and forms no part of it.   Let it be assumed that the judgment had been affirmed at the general term when it rendered its judgment, which was in December, 1857, and there had been no other appeal, could there have been any real doubt of the liability of the sureties upon the undertaking?   What good reason could have been given for their exoneration?   None whatever, that I can imagine.   There is their written agreement that the appellants should pay if the judgment should be affirmed, and there would have been the judgment of affirmance at the general term and no further appeal.   The liability of the sureties would, under such circumstances, have been irrevocably fixed.   If the sureties would have been liable, then they must be liable now, because if their contract is impaired or broken by force of the act of the 17th April, 1857, it was impaired and broken the moment the act passed into the form of a law, which was eight months before the decision of the general term was rendered.   The undertaking and the defendants' obligation under it, cannot be valid and in force up to the time the decision of the general term was rendered, and of no force or effect after that time.   These reasons lead me to conclude that the right of the plaintiff to maintain this action is not affected by the amendment to the law giving an appeal from an order made at the general term of this court granting a new trial.   We have already determined (*Seacord* agt. *Morgan*, 17 *How. Pr. R.*, 394) that when there is an appeal from a judgment against two defendants, the sureties upon a joint undertaking are liable if the judgment is affirmed against one.

The judgment of the special term should be affirmed.